The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention for the Court is now sitting. God save the United States and this Honorable Court. All right, please be seated. We'll begin this morning with United States v. Cox, and Mr. Leiston, it will be a pleasure to hear from you. Thank you, Your Honor. Good morning, and may it please the Court, Jenny Leiston for Roy Cox. Your Honors, the District Court erred in classifying Mr. Cox as a career offender, and the government cannot meet its burden of showing that that error was harmless. So first, as to the error, Mr. Cox's prior Florida conviction for trafficking in cocaine is not a controlled substance offense under this Court's well-established precedent. The offense is overbroad because it includes conduct that is not covered by the controlled substance offense definition. Specifically, the Florida trafficking permits conviction based on purchase and possession of cocaine, but does not require the jury to find intent to distribute as 4B1.2 requires. Well, there's no dispute about that, is there? There is not, Your Honor. I mean, you know, this is pretty clear that a controlled substance offense doesn't involve purchase or possession, and yet the so-called predicate here allowed conviction based on purchase or possession, so it was considerably broader, and that's understood, but the difficulty for you is, as we both recognize, that the District Court said, well, if it's sent back to me, I'm absolutely going to impose the same sentence as I did before, and so the question arises, is a remand simply a useless jump through hoops? Absolutely, Your Honor, and I just wanted to start out with that to get us all on the same page. I just wanted to make sure that there were no questions in the wake of the Eleventh's decision in Roe, but I think if we're all on the same page, this was absolutely an error. We can certainly turn to the harmless error question, which I do think is the main issue here, and so to establish harmless error, and again, the government does have the burden here of showing that, and what we're talking about is then the government has the burden of convincing you that the District Court would have reached the same sentence, that that sentence would be reasonable, and as this Court said in United States v. Shivers, the burden is on the government to show that the error did not have a substantial and injurious effect or influence on the result, and I think that... Can't we, on their instances, where we can take the District Court at its word? So, I think the burden here for the government... Isn't that particularly the case where the difference that we're talking about was, what, four months or relatively small difference, relatively small upward adjustment from what you had requested? No, Your Honor, I don't think that's true. There was an alternative request, but what we were saying, in order to show harmless error, the government, first of all, has to show you that that career offender designation didn't have any injurious influence on the result. There are a couple of factors at play here that I think makes it difficult for the government to meet that burden. First, you have such a wide divergence between the correct range and the erroneous range. So we're not talking about just a little two-level enhancement that upped the guideline range by a couple of years. This was a significant gulf between the correct range and the erroneous range, and every time... And the Court said, I'm compromising, I'm anchoring my decision, I'm giving you what's in the middle of that. So he obviously anchored that sentence to the erroneous range, and every time he mentioned the alternative variance, which must be both substantively and procedurally reasonable, the only thing he mentioned was the career offender guideline. Every time... Why isn't that, like, totally the right way to think about this? Because we've got guidelines that are not binding, right? They're, like, indeed what the word says. They're guidelines. That's right. And so you might well say, if you were a district court judge, which seems like what the district court judge is saying here, is whether you are technically a career offender or not, in my sense, you are actually a career offender. And we may understand that under the technical rules here, this is not a controlled substance offense, but he can make the judgment that, like, effectively you are. No worse than the person that was convicted of the same offense that has an intent to distribute element to it. And so I sort of think that you sort of are, like, a career offender. And so I can take account of, if you were technically a career offender, you'd be here. If you technically weren't here, but I'm actually not judging your sentence based on technicalities. I'm trying to take the measure of the man. And in doing that, I can sort of, like, say, listen, whether you're technically one way or the other, this is the right sentence. Why isn't that, like, exactly what district court judges ought to be doing, rather than getting all wrapped up in these technicalities about what qualifies under the modified categorical approach, whatever in the world it means? So the difficulty, I think, is that, so let's imagine that the court hadn't ever, did not make this mistake, that Mr. Cox was never designated a career offender. Do we really think the court would be making that same assessment and thinking that Mr. Cox, his, his, absolutely, right? So if the district court went the other way and said, you know, I now have thought about this more, I find he doesn't technically qualify as a career offender. But if he did, which he in reality is a career offender, he's just not technically a career offender, his guidelines would be up here. And so I want to sort of think about both sets. Like that seems like exactly what we're asking district courts to do. Like consider the technicalities, and we demand that you do these, like, uber technical decisions to decide the right guideline range. Maybe that's, like, required, but, but once you do so, you can also say, listen, we know for reality's purposes, the measure of the man here is that he is a career offender. He is technically not one, but the measure of the man is, and so I'm going to take that into account. That seems like exactly what we want district courts to do. And I would, my argument would be that that is just, he's not a career offender, and that to tie that sentence expressly to the career offender guideline and repeatedly just refer in the alternative variance to the career offender guideline. That would be an impermissible thing for the district, for a district court to do. A district court to say, you know, this second degree murder charge is not a crime of violence under the technical rules, or this trafficking offense is not technically a controlled substance offense, and so I find that it's not a career offender. But I'm going to look at what he would have been, what his guidelines would have been as a career offender, because I think the measure of the man is he is a career offender, even though technically he doesn't qualify. You think a district court judge is prohibited from doing that? No, I'm not saying he's prohibited. I'm simply saying that it's more difficult for the government to meet its burden to show that that career offender, Roney's career offender... Well, but are you contending that the alternative sentence would be unreasonable? The alternative sentence seems to be a perfectly reasonable one. No, I do think the alternative sentence is also both procedurally and substantively unreasonable. When you look at the criminal history here, I mean, under the technical rules here, the instant offense probably doesn't qualify him as a career offender, no problem, but when you look at the overall picture here, the criminal history includes criminal offenses of distributing cocaine and possession with intent to distribute and all of the way. And then the career offender, when you look at the total history here, all the questions about the dividing line between possession and purchase on the one hand and distribution on the other hand, that's what makes him not a career offender, is because there's this line between possession on the one hand and purchase, and then distribution on the other hand, which we think is a more serious offense. And then when you start looking at the criminal history, that line disappears because there are many, many, or there are a number of convictions here for distribution. He's not just, at the end of the day, he is not just a possessor. He is not just a purchaser. There are offenses for distribution and intent, possession with intent to distribute. And so the whole dividing line that makes the career offender an erroneous technical adjudication disappears when you look at the totality of the picture. And so if this panel is convinced that the sentence is procedurally, the alternative variant sentence is procedurally and substantively reasonable, and that the career offender did, that the alternative variant sentence is procedurally and substantively reasonable, nonetheless, that the error here still had an injurious effect on the result because of the continuing harm of the career offender designation. No, but if we . . . Can you explain that? The whole purpose of the Gall decision was to accord the district courts a place of promise in sentencing. And if we don't take the district court at its word here and we fail to recognize it, at the end of the day, this person is not just a possessor, but he is a distributor. And if we don't take the district court at its word with these circumstances, aren't we running counter to what Gall wanted to do, which was to preserve a measure of discretion in primacy and sentencing, and have that reside with district courts? And so what I was trying to say, Judge Wilkinson, is this, this career offender designation is nonetheless harmful because it will harm Mr. Cox in the future. It renders him ineligible for any future guideline amendments, retroactive, and it will raise his guideline range at revocation. And so what I'd like to do is talk about this court's decision in United States v. Charles, because the government has brought that up in its surreply brief. I actually think Charles is quite a good decision for me, because it shows that this court will consider potential harm beyond just the sentence that is the term of imprisonment. How would it harm him in the future if the opinion makes clear that the career offender designation was technically erroneous? We wouldn't have to say, assuming arguendo, we could say the career offender designation was in error. And if the court explicitly says it's in error, how is that going to be harmful to the individual's future when the error is mentioned and conceded? And so if this court will actually reach the merits, because a lot of times under assumed harmlessness, this court declines to even reach the merits and just says, well, we don't need to talk about the merits. So what you're asking us to do is, because of the future and not harm this individual in the future, you're asking us not to say, assuming arguendo. And that seems to me a very fair request in light of your representation of your client. That resonates with me. And a lot of times, you're right. We move right on to harmless error by virtue of saying, assuming arguendo. And you're asking us, please do not do that here. I am, Your Honor. Can you just help me understand? I want to make sure I understand the argument here. With respect to the revocation proceedings, why do you think that a future court would be bound by the prior court's decision with respect to what the criminal history category is? Because the criminal history category, he is, in the judgment, is now a 6 by virtue of the career offender designation. That's what it says in the judgment. And you think, even if there was intervening case law, but not our decision, right? Imagine we just punted on the question. You think that the future district court is bound by the prior district court, even if there have been changes in the law since that happened? I think the probation officer is going to look at that judgment and say, he's a criminal history category 6. That's never been corrected. But that's what the probation officer is going to do. But the judge, the revocation judge, I mean, again, we're now talking about your client has gotten out of jail and violated his terms of release, whether that is a basis for us to reach. This seems crazy to me. But the judge is not bound by it, right? The judge who gives the revocation sentence is not bound by the old criminal history determination. Again, if this court makes clear- No, no, I'm talking about if we don't reach it at all. If you don't reach it at all- We just assume error. You think they're bound. If you don't reach it, the district court is going to assume that it was correct. No, no, no, no, no, no, no, no. You have to say that it's bound by it, not that it will assume it was correct. You have to say it's bound, because my point is that the revocation judge has to make its own decision about what the criminal history category is, and the defendant can object to it. And he's not bound by the prior judge's decision. Why would the judge make a different decision if this court has not reached the merits and says- And if the district judge gets, in your view, if the district court gets it wrong in that instance, you have a right to an appeal, right? Just like everything else. But the decision here doesn't affect that decision. It's not a legal limitation on that decision. I mean, the way the revocations work is that the probation officer is just going to give that guideline range. I agree. Yeah, we could make a whole other argument. We could go through this all over again, I suppose, at a revocation hearing. But you want that. Your argument is you want us to do that not because it's necessary if we think there's an unharmless error, but to resolve it in your favor for future criminal conduct? Yes, and for also to just make it clear to BOP that he's not a career offender, and to make it clear that he would be eligible for any future guideline amendments. If that is all the relief that this court would be willing to give, we are satisfied  But aren't all of those things just totally speculative, right? Like what the executive does or doesn't do is beyond us, right? We talk about this with respect to where they're housed and how BOP treats things. That's just not our problem. So what do you think Charles tells us that we have to consider what BOP might do based on what the criminal history category is? I'm saying that the government has the burden of showing that this error was harmless. I'm simply pointing out the harms that are likely to occur if the error is not corrected. So you think the harmless error evaluation for us includes harm that other judges in the future may assign to the district court's career offender determination? Harmless error is with respect to the decision, the sentencing decision here, isn't it? Your Honor, I see I'm past my time. May I answer Judge Wilkenson? Go on. Thank you, Your Honor. It is not limited to simply that. And again, I point to Charles because in Charles, this court actually did send the case back to the district court to determine whether the defendant might be eligible for relief under the First Step Act. But that was relief at that point, right? And what Charles says is what we don't do is engage in unrealistic speculation about the possibility of some future harm by some other actor, right? That's what Charles is telling us not to do. Don't think about what BOPs might do or might not do. Don't think about what might happen when this defendant commits another offense or violates his supervised release. Those are the speculation that Charles tells us not to consider. So I have to disagree, Your Honor, because Charles is very, very fact specific. And if Charles actually said that, it would have been very easy for the district court I'm quoting, must not engage in unrealistic speculation about the possibility of future harm. That's a quote. I'm not, I mean, it's not, it's not fact specific. Like that's the quote. Right. Charles also is very fact specific. Judge Niemeyer was very careful to extensively say over and over again on these facts under these circumstances. And again, also, let's make clear, it was the defendant's burden in Charles to show harm. It wasn't the government's burden to show that the harm was harmless. There's no speculation if we do what courts do a million times during a term, which is to say, yes, there was error here, but it's harmless. And there's nothing in Charles that, Charles prohibits speculation, but it doesn't prohibit a court from acknowledging an error as part of its duty of exposition. You see what I'm saying? It doesn't prohibit us from acknowledging an error as part of our duty of exposition. I agree, but I'm also simply saying that Charles, the only harm that the defendant... We don't have to say why. We don't have to say whether we're doing this because we're speculating or anything like that. I don't, I don't, I don't think that, that, I don't think that we're required to speculate in any case that we find an error. But all I'm saying is that we owe a certain duty of exposition to the public. And sometimes that requires acknowledgement of an error. It doesn't, it doesn't require us to speculate about harm down the road or what is it? It's just a product or obligation to explain what we are doing and why. And the reason why we are doing this is because this is not a, as the sentencing guidelines make clear, this is simply not a controlled substance offense for purposes of the career offender statute. And that's all that needs, that needs to be said. And if this court is willing to say that in, in an opinion, that we would be satisfied with that, Your Honor. Okay. Thank you, Your Honor. Mr. Pugh. Good morning. May it please the Court. You have conceded the error. Do you have any objection to the court as part of its, of its, of its, of its, of its discretion that we have to explain ourselves and the terms that we wish to explain ourselves? To acknowledging that there was a career, that there was an error here, and saying that this was a controlled substance offense? Your Honor is right. We're not contending that this was not an error. I think that's foreclosed by Brandon. I think if the court had any reservations, it would be based on the fact that this area of law is in flux. But do you have any objection to what your opposing counsel suggested? Do you have any objection to that? You conceded the error? We have conceded the error. Yeah. But do you have any objection to, to our, I can't imagine what it would be. We don't need to speculate, but it is within our discretion to say that there is a, that there was an error here. Your question, Your Honor, is to acknowledge the error versus to assume an error? Pardon me? I want to make sure I'm understanding your question correctly, Judge Wilkinson. No, we would not object, object to that. I think the reservation there would be that the field of law is in flux, the Eleventh Circuit, only after our briefing switched course on it. So if the court elected instead to wait until the decision was necessary for a case, I think that would be a very viable path. But if the court- Your point with the Troll side is, we, it, we're not required to do it. These sort of speculative future harms don't require us to reach the merits. Absolutely, Your Honor. And find us an error. But, but your point is to, with respect to Judge Wilkinson, the pragmatic arguments that he's made for reaching the merits, you sort of defer to the court because the court is entitled to make those decisions. Your argument is the court doesn't have to do that. Charles tells us that this future violation of supervised release, these potential future harms that are speculative, those are not enough to create a harmless error problem. It doesn't mean that, you know, we don't have the discretion to reach an error rather than That's absolutely correct, Judge Richardson. And I agree that with regard to this revocation problem, we have a speculative revocation in the future. We have this idea that the probation office and the parties- We would have every right, as my fine colleague suggests, we would have every right, if we wish, to say, assuming arguendo, that any error occurred. We don't, obviously, and I think Pearson v. Callahan and a number of other decisions are beginning to give courts of appeals more discretion. You look over in the qualified immunity context, we have discretion as to whether we want to reach the qualified immunity point first or whether we want to reach the constitutional violation point first. And all I am suggesting is a terribly modest thing, which is that it is within our discretion to indicate that the error was . . . that an error was made. It's within our discretion. It has to be within our discretion to say that an error was made. But we cannot be required . . . prohibited in some way . . . I think that's exactly correct. From assuming arguendo, we absolutely have the right to assume arguendo. The question is, should we? And that's a discretionary call for the court of appeals, is it not? That's correct. I believe that the court does not need to reach it for the reasons that have been discussed, but it can. I don't think we need to reach it, but the question is . . . I know she made an argument that we should. I don't think that that argument is frivolous. And so, I know it's a perfectly logical thing when people sit behind these different tables to disagree, but it's not unheard of when two people recognize that there's an area of agreement. I agree, Your Honor. I think it's within the court's discretion. I think there are some countervailing reasons to perhaps wait, but we have no objection if the court was inclined to go forward with that. Can you address your colleague's argument on what I'll call maybe the more core harmless error, like whether the sentence was actually harmless? I don't want to misrepresent her argument, but I take at least part of her argument to be that we shouldn't find it harmless, despite what the court said, because the court indicates the anchoring use of this higher guideline, and by referencing and using the incorrect guideline as an anchor or reference point, that shows us that it has some sort of effect on the ultimate sentence that was given. Can you sort of respond to why you think that's not correct? Absolutely, and I think there's two pieces to that. There's what the district court did, and there's what is not present in this transcript. If we look at some of the cases where the court has found that there is, did not apply harmlessness, we see, for example, in Greene, 2021, the court noted there was no record evidence showing the district court's 144-month sentence was imposed independently. In Gomez from 2012, nothing in the record suggests the district court would have varied upwards to arrive at a 24-month sentence, or in Shivers, which opposing counsel cited, the government actually specifically asked if the court would be willing to state that the same sentence would apply without the enhancement. It declined, and the court noted where it is unclear whether a district court would impose a lower sentence, courts have erred on the side of remanding for resentencing. So we don't have those facts here. Now, what do we have? We have, as Judge Richardson, as you described, we have a district court that is taking the measure of a man, and this district court, as many courts have, has expressed some frustration with pre-offender and noted that the approach does not involve the defendant in front of me, noted that it does not involve what the person actually did. Nonetheless, in noting that there were these two prior cocaine convictions, the district court mentioned... Well, part of the reason it's harmless, it seems to me, there's a fundamental reason about leaving district courts in a primary position, but then there's also the reason that the 120-month sentence is perfectly reasonable. It is a substantively reasonable sentence. It's not that much of a variation from what was requested or what the guidelines show, but where the district court says, I'm going to do the same thing, and where the thing that he did was substantively reasonable because of all of these predicate offenses involving distribution and possession with intent to distribute and everything, why wouldn't that be harmless? I mean, how could it be anything else? Absolutely, and that is our position, and I think it overlaps with the point I was about to make. The district court mentioned career offender as it went on in sentencing, but if we look at the context, the district court said the career offender guideline is intended to capture the increased likelihood of recidivism, and he stated that his sentence falls within the intent of the career offender guideline. He's not anchored to it. He's noting that career offender, as many statutory schemes, as many parts of the guidelines, just emphasize that when someone repeatedly commits violent crimes or repeatedly commits drug distribution offenses, that there is an increased risk of recidivism there. I would think that it is actually, from the standpoint that you're arguing, you could look at this from the government's standpoint as being advantageous when the court recognizes, rather than just assuming arguendo, but recognizes an error and yet proceeds for a variety of reasons to hold the error to be harmless, and that seems to me, in fact, a stronger argument for harmless error than if we just slide over it and say, well, this is assuming arguendo. It provides a clear illustration of where there was a plain error or an error, and yet the court still, for various reasons, found that to be harmless, and that, I think, bolsters the importance of harmless error analysis when we're dealing with district court sentencing. I'd agree that harmless error analysis is most critical in that scenario where the court does conclude that there was an error. I think either way how the court wants to proceed on the Florida trafficking conviction in this case, we have harmlessness here. The district court's decision is very well explained and thoroughly. Had this been an appeal simply of an upward variance from that range, I think there'd be little question that that would be substantively reasonable. I would also note that if the court looks at the entire transcript of the sentencing and sets aside the portion where career offender specifically was discussed, this frankly reads like a transcript of a sentencing going from that 84 to 105 guideline range. In fact, as soon as the district court made that ruling, it stated, this ruling in no way precludes an argument under 3553 that the other guideline range may result in a more warranted sentence. That's it, JA 55. And the government, having already filed a motion for upward variance from that lower range, proceeded, despite this ruling, to argue, I think in its first sentence, that upward variance from that lower range was reasonable. Defense counsel, both in their initial statements and the rebuttal, talked about that range ultimately backpedaling to the request that the court take that range, bump him up to six based on the recidivism risks, and then impose a sentence of 115. Only five months less than what the district court ultimately imposed here. This was an eminent reasonable sentence based on an entire hearing that was discussing an upward variance from that lower range. All right, do you have anything further? I'll ask my colleague if they have further questions. Thank you. Seeing no further questions, we've asked this court to defer. We have no further questions. Thank you. You, Joyce, you'd have some more time. All I would like to say, Judge Wilkinson, in favor of a decision that actually reaches the merits of this issue, a first impression in this circuit, is that it would also be very beneficial, obviously, to the circuit to have more guidance on this issue, and also to the district court, so that he doesn't make this mistake again in the future. I'm not interested in going into how beneficial it would be or how beneficial it wouldn't be. All I'm saying is that there are some times that I feel more comfortable when the court doesn't glide over that and is candid in the fact that this was an error based on our precedent. We're not afraid to acknowledge that. I think it makes the case down the road for harmlessness even stronger when you acknowledge the error and say, but no remand. We would ask this court to actually reach the merits. If this court is inclined to grant a non-harmless error, to not avoid the merits of the decision. Assuming we're going to do that, can you just summarize why you think the 11th Circuit gets it wrong? The 11th Circuit is just on the other side of a well-established circuit split. The 11th Circuit does infer intent to distribute based on a statutory presumption with quantity. The 4th, 5th, 6th, 9th, and 10th Circuits fall on the other side of the circuit split. You've got Brandon. You also have this court's all the other precedent that says with a controlled substance offense definition is different from the ACCA definition. It's much tighter. Unless that intent to distribute is in the statute, unless the jury has to find intent to distribute, it's not a controlled substance offense in this circuit. I see that you're court appointed and I want to thank you very much for your argument. You've done a fine job and we really appreciate it. Thank you, Your Honor. We'll come down and Greek Counsel will move directly into our next case.
judges: J. Harvie Wilkinson III, Julius N. Richardson, A. Marvin Quattlebaum Jr.